JAMES C. BRADSHAW (#3768)
BROWN BRADSHAW & MOFFAT
10 West Broadway, Suite 210
Salt Lake City, Utah 84101
Telephone: (801) 532-5297
Facsimile: (801) 532-5298
jim@brownbradshaw.com

DANIELLE HAWKES (#13233)
HAWKES LEGAL SERVICES, PLLC
10 Exchange Place, Suite 622
Salt Lake City, Utah 84111
Telephone: (801) 243-5669
danielle@hawkesjustice.com

Attorneys for Plaintiffs

FILED
U.S. DISTRICT COURT

2013 JUL 26  ⊃ 2: 29

DISTRICT OF UTAH

BY:_____
  DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MICHAEL TILT and MICHAELA CHRISTINE TILT,<br><br>  Plaintiffs,<br><br>v.<br><br>LISA STEED, a former Utah Highway Patrol trooper, in her individual capacity, and JOHN and JANE DOES 1-30,<br><br>  Defendants. | COMPLAINT<br>(Jury Demanded)<br><br>Case: 2:13cv00696<br>Assigned To : Pead, Dustin B.<br>Assign. Date : 7/26/2013<br>Description: Tilt et al v. Steed |

## PRELIMINARY STATEMENT

1.      This 42 U.S.C. § 1983 action seeks monetary damages (general, special, and

punitive) for improper interference with the constitutional rights of plaintiffs under both the

United States and Utah Constitutions. Plaintiffs seek attorney fees, costs, and interest under 42

U.S.C. § 1983 and 42 U.S.C. § 1988.

## JURISDICTION AND VENUE

2.     Plaintiffs Michael Tilt and Michaela Christine Tilt are residents of Salt Lake City, Salt Lake County, State of Utah.

3.     Defendant Lisa Steed is an individual, who at the time of the events at issue, was employed by the Utah Highway Patrol as a trooper. In the performance of her official duties, Defendant Steed acts under color of state law.

4.     This court has personal jurisdiction over defendants, all residents of Utah.

5.     This action arises under the Constitution and laws of the United States, including the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983 and 42 U.S.C. § 1988. This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

6.     This court has supplemental jurisdiction to hear plaintiffs' state constitutional claims arising from the same factual situation pursuant to 28 U.S.C. § 1367.

7.     Venue is proper with this court pursuant to 28 U.S.C. § 1391(b) as Utah is the district and division in which the claims arose and in which the defendants reside. Defendants are subject to personal jurisdiction within this district.

## PARTIES

8.     Plaintiff Michael Tilt is an individual, adult resident of Salt Lake City, Salt Lake County, Utah. Mr. Tilt was detained and arrested in the absence of articuable suspicion or probable cause on October 28, 2010.

9.      Plaintiff Michaela Christine Tilt is an individual, adult resident of Salt Lake City, Salt Lake County, Utah. Ms. Tilt was an eyewitness to the events of October 28, 3010.

10.     The Utah Highway Patrol (UHP) is a political subdivision of the State of Utah. The UHP is organized and exists under the laws of the State of Utah. The State of Utah, UHP, and its agents and commanders are state actors and are responsible for the day-to-day operation of Utah's largest force of peace officers. Working at the UHP are certain John and Jane Doe defendants who are responsible for the policy making, training, and supervision of the troopers employed by the UHP. Among other things, the UHP and certain individual John and Jane Does were responsible to properly and sufficiently train and supervise UHP employees and troopers. The deliberate, knowing, and reckless indifference of the UHP and its agents allowed Steed to habitually and systematically infringe and violate the rights of Utah citizens and other persons peaceably operating vehicles on Utah roadways.

11.     Defendant Lisa Steed is an individual, who at the time of the events at issue, was employed by the UHP as a law enforcement trooper. In the performance of her official duties, Defendant Steed acted under color and guise of state law. On October 28, 2010, Trooper Steed was designated to a "special operations" unit which did not do traffic enforcement but rather focused exclusively on DUI enforcement.

12.     Upon information and belief, the UHP had actual notice as early as May 14, 2010, and probably before that date that Steed was illegally detaining and arresting citizens without basis and in violation of their constitutional rights.

3

13.     The John and Jane Doe defendants are so listed because plaintiffs do not yet know the identities by name of various defendants such as UHP commanders, other troopers involved, other directors, and other employees who were charged with enforcing the statutes and supervising the UHP policies and practices about which complaint is made. In the course of discovery, the names of these defendants will become known and will be added as named defendants. Plaintiffs reserve the right at any time before trial to add such defendants by name as their names become known. The listing of these defendants by a "Doe" designation hereby preserves any and all rights or claims that might be made against such individuals, as if they were named personally herein as defendants.

## FACTUAL AND GENERAL ALLEGATIONS

### *Michael Tilt*

14.     At approximately 7:30 p.m. on October 28, 2010, Mr. Tilt was riding his bicycle near 2700 South Main Street, Salt Lake City, Salt Lake County, Utah, when he was detained by the UHP.

15.     Because he suffers from disabilities as set forth in this complaint, Mr. Tilt relinquished his driving privilege prior to October 28, 2010, relying solely on the bicycle for transportation. Because there were times when his disabilities compromised his ability to adequately pedal the bike, there was an electric motor attached to the bike that would assist Mr. Tilt.

16.     On October 28, 2010, Mr. Tilt realized that a vehicle was following him slowly. Mr. Tilt stopped to see why the car was following him; and at that point the vehicle activated

4

emergency lighting and a trooper, Lisa Steed, stepped out. Mr. Tilt dismounted his bicycle and walked towards Defendant Steed to speak with her.

17.     The exact verbiage of what transpired was not recorded because Defendant Steed deliberately and selectively turned the microphone assigned to her on and off so as to capture some portions of the traffic encounter while shielding others from discovery.

18.     It is upon information and belief that the facts contained herein transpired.

19.     Defendant Steed asked Mr. Tilt for his identification, and he produced a Utah identification card.

20.     Defendant Steed told Mr. Tilt to lean his bicycle against her vehicle and began to administer field sobriety tests (FSTs).

21.     Mr. Tilt suffers from a severe seizure disorder, cerebral palsy, and birth defects, and those disorders are obvious to any observer.

22.     As Defendant Steed described each FST, Mr. Tilt repeatedly explained his disabilities to her and explained why he would not be able to take the tests. Mr. Tilt explained, among other things, that one side of his body was shorter and weaker than the other; that he suffered from a seizure disorder; and that he suffered from unknown birth defects.

23.     Defendant Steed ignored Mr. Tilt and proceeded through a litany of FSTs.

24.     Defendant Steed put Mr. Tilt through at least five FSTs, including the horizontal gaze nystagmus, the walk and turn, the Romberg test, an ABC test, and the one-leg stand.

25.     In addition to Mr. Tilt's claims of disability, as Defendant Steed made trained observations, she would have noticed several of Mr. Tilt's physical disabilities that made the

5

FSTs dangerous and invalid. These observations would have included: (1) Mr. Tilt's weak left side; (2) Mr. Tilt's unique eye gaze, typical of seizure sufferers; and (3) the fact that Mr. Tilt had one leg shorter than the other.

26.     Regarding the observations of Mr. Tilt's disabilities that invalidated the FSTs, Defendant Steed was either trained improperly in FSTs, made the trained observations and ignored them, or failed to make the observations according to her training.

27.     Not only were the FSTs unfair and non-indicative of criminal behavior given Mr. Tilt's disabilities, but they also placed Mr. Tilt in physical danger and caused Mr. Tilt to fear for his safety. For example, Defendant Steed required Mr. Tilt to stand without support in front of her flashing emergency lights for over five minutes. It is common knowledge, and something on which emergency personnel are trained, that flashing lights trigger seizures in vulnerable people. In addition, the walk-and-turn test was very painful for Mr. Tilt because his legs do not naturally move in the manner required. He also stumbled several times, causing Mr. Tilt to fear that he would fall.

28.     Defendant Steed at no time offered support or safety precautions to Mr. Tilt.

29.     Despite having insufficient information to indicate impairment, and despite the fact that Mr. Tilt was not impaired, Defendant Steed placed Mr. Tilt under arrest for Driving Under the Influence.

30.     Despite a lack of probable cause, emergency, or warrant, Defendant Steed searched Mr. Tilt's clothing and person.

6

31. During her encounter with and arrest of Mr. Tilt, Defendant Steed selectively muted and activated the microphone issued to her in order to create a skewed record of the events.

32. Defendant Steed took Mr. Tilt to Special Operations to have his blood drawn. That blood test came up negative for all inebriating substances.

33. Defendant Steed, with the assistance of other UHP troopers, then booked Mr. Tilt into the Salt Lake County Jail with a $1,567.00 bail.

34. Upon booking Mr. Tilt, Defendant Steed searched him and found a pill box that contained one dose of Kepra and Trilepetal. Mr. Tilt explained that he needed to take those pills to prevent a seizure.

35. Defendant Steed, however, took the pills from Mr. Tilt and placed Mr. Tilt into a jail cell.

36. Mr. Tilt never took the medication he was prescribed to take the evening of October 28, 2010, because of the stop at issue and because it was taken from him at the jail.

37. Mr. Tilt's oldest daughter, Courtney Tilt, arrived at the jail as Mr. Tilt was being booked. She explained Mr. Tilt's disabilities to defendants and was ignored. Courtney then called Mr. Tilt's on-call physician who became extremely concerned about Mr. Tilt's well-being and also tried to explain to jail personnel that Mr. Tilt was extremely vulnerable to a seizure and other ailments. The physician tried to explain the medications at issue and that Mr. Tilt needed to take them immediately.

7

38.     Both Courtney's and the physician's pleas and instructions were ignored by Defendant Steed.

39.     Mr. Tilt was never visited by a medical professional while in jail.

40.     Mr. Tilt was released from jail the following morning at approximately 5:30 a.m.

41.     Mr. Tilt never received the medication that was seized from his person.

42.     Shortly after Mr. Tilt's arrest, Courtney Tilt was contacted by a UHP employee. That employee asked to speak "off the record" and explained that he felt that it was wrong what had happened to Mr. Tilt but that his supervisors prevented him from dropping the charges earlier. This individual told Courtney to please not contact an attorney and if she had already contacted an attorney to please keep their conversation "off the record."

43.     Mr. Tilt suffers predictable seizures if he misses a dose of his medication or suffers stress.

44.     Each seizure that Mr. Tilt suffers causes him irreparable harm.

45.     Mr. Tilt suffered a seizure at approximately 4 p.m. the day he was released from jail, which appears to have been caused by his failure to take his prescribed medication the night before and/or by the stress of the events at issue.

46.     It is highly likely that Mr. Tilt also suffered a seizure while at the jail on October 28, 2010.

47.     At the time of incident, the UHP and/or John and/or Jane Does knew, and/or it was obvious, that Defendant Steed was reckless, negligent, and/or willful in her disregard for

8

others' constitutional rights and that she had used her authority, vested in her by the other defendants, to violate these rights.

48.     The UHP and/or John and/or Jane Does knew, and/or it was obvious at the time of incident, that failure to supervise Defendant Steed was substantially certain to result in a constitutional violation but consciously and deliberately chose to disregard the risk of harm.

49.     There is a significant segment of the adult population in Utah who have the disabilities from which the plaintiff suffers, including cerebral palsy, seizure disorders, brain injuries, cognitive disabilities, or related disorders. It is common knowledge that these disorders or illnesses can cause abnormal behavior or cause an adult individual to be vulnerable, needing adult supervision.

50.     The UHP and/or John and/or Jane Does failed to properly train its troopers, including the other defendants, on these disabilities and how to distinguish a driver impaired by drugs or alcohol from one who suffers from a disability.

51.     The UHP and/or John and/or Jane Does knew, and/or it was obvious, that failure to provide adequate training on dealing with these disabilities was substantially certain to result in the violation of clearly established constitutional rights of those who suffer from these conditions. The UHP consciously and deliberately chose to disregard the risk of that harm in its failure to adequately train its troopers.

52.     Some or all of the actions of defendants were the result of willful and malicious conduct and/or manifested a knowing and reckless indifference toward, and a disregard of, the rights of others.

9

### *Michaela Christine Tilt*

53.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

54.    On October 28, 2010, Michaela Tilt became nervous that her father, Mr. Tilt, had not returned home from the grocery store. Michaela therefore took a bicycle and rode down the street to find her father being interrogated by Defendant Steed.

55.    Because of Mr. Tilt's medical conditions, Michaela became alarmed and afraid and approached Defendant Steed to try and explain that her father was not under the influence and was disabled.

56.    Defendant Steed refused to listen to or speak with Michaela and instead took an aggressive and threatening posture with her.

57.    Although 18 years old at the time, Michaela experienced a traumatic brain injury which has resulted in compromised brain function. Michaela operates with the developmental capacity well below her actual chronological age and can only be left alone for short periods of time and cannot be left to make decisions concerning safety.

58.    Defendant Steed's mannerisms and actions towards Michaela's father caused Michaela to become panicked and suffer extreme fear as she sat by herself across the street.

59.    Michaela called her older sister, Courtney Tilt, who instructed Michaela to try and explain Mr. Tilt's situation again to Defendant Steed.

60.     When Michaela again tried to explain important facts to Defendant Steed, Defendant Steed acted even more aggressively towards Michaela. Defendant Steed yelled at Michaela and told her to "get on the other side of the street and shut up."

61.     Michaela did cross the street and remained quiet, but after some time again attempted to speak with Defendant Steed. Subsequent attempts were again met with Defendant Steed yelling at Michaela or ignoring her completely.

62.     Michaela was visibly upset and traumatized by the situation.

63.     Mr. Tilt attempted to explain to Defendant Steed that he needed to talk with Michaela to help her, and Defendant Steed refused to let him communicate with Michaela.

64.     Without checking on Michaela's well-being or ensuring that she had a safe place to return to with a guardian to help her, Defendant Steed left the scene with Mr. Tilt, leaving Michaela by herself on the side of the road.

65.     Because of Defendant Steed's actions, Michaela suffered and continues to suffer emotional distress and was placed in harm's way when she was left without adequate adult supervision.

66.     Defendant Steed knew or should have known that her actions would cause Michaela to be a vulnerable, disabled adult and would cause her to suffer emotional distress.

## FIRST CAUSE OF ACTION

### Unlawful Search and/or Seizure in Violation of the Fourth and Fourteenth Amendments to the United States Constitution under 42 U.S.C. § 1983 (All Defendants)

67.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

68.     At the time of the incident, plaintiffs had clearly established rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unlawful search and seizures.

69.     Defendants knew, or as reasonable law enforcement troopers should have known, of these rights and nonetheless acted in ways that violated plaintiffs' well established rights.

70.     Defendant Steed and/or John and Jane Does acted in their individual capacity and under the color and pretense of state law to perpetrate their violations against the plaintiffs' rights.

71.     Defendants' actions in violation of plaintiffs' Fourth and Fourteenth Amendment rights were the direct and proximate cause of the damages to plaintiffs as alleged herein.

72.     These violations of plaintiffs' rights are actionable under 42 U.S.C. § 1983, and plaintiffs are entitled to remedy from the violations.

## SECOND CAUSE OF ACTION

### Violations under Utah Constitution Article I, Sections 1, 7, 9, and 14 (All Defendants)

73.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

12

74.     At all relevant times, plaintiffs had clearly established rights under Article I, Sections 1, 7, 9, and 14 of the Utah Constitution.

75.     The actions of defendants, as described herein, constituted flagrant violations of plaintiffs' rights protected under Article I, Sections 1, 7, 9, and 14 of the Utah Constitution, which protect the right of persons to not be treated with unnecessary rigor, to be free from unreasonable searches and seizures, to not suffer a justified loss of liberty, and to not otherwise suffer violations of their state constitutional rights.

76.     A reasonable person in defendants' place would have known that his or her conduct was illegal and would deprive plaintiffs of their state constitutional rights.

77.     Defendants' actions as described above were willful, wanton, or reckless and manifested malice and reckless indifference to plaintiffs' state constitutional rights.

78.     As the direct and proximate result of defendants' actions, plaintiffs suffered physical and emotional injury and deprivation of constitutionally protected rights, and they are entitled to relief.

### THIRD CAUSE OF ACTION

#### Defective Policies and Failure to Train and Supervise in Violation of the Fourth and/or Fourteenth Amendments Cognizable under 42 U.S.C. § 1983 (Defendants UHP and John and Jane Does)

79.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

80.     The conduct described herein reflects an established policy, practice, custom, and/or decision, officially adopted or informally accepted or condoned by the UHP and its

13

officials and employees, including John and/or Jane Does, which policy, practice, custom, and/or decision consists of faulty or non-existent training and/or reckless, negligent, or willful acceptance and/or encouragement of violating other's constitutional rights.

81.     Defendants UHP and/or John and Jane Does are required to take action to properly train and supervise their employees or agents and prevent their unlawful and unconstitutional actions.

82.     Defendants UHP and/or John and Jane Does were deliberately indifferent toward the proper training and supervision of their employees and agents. Defendants UHP and/or John and Jane Does failed to properly train and/or supervise their employees and agents.

83.     Defendant Steed and/or John and Jane Does engaged in the herein-described conduct pursuant to and as a result of defendant UHP's and/or John and Jane Does' policy, practice, custom, and/or decision.

84.     The actions of defendants UHP and/or John and Jane Does alleged herein involved reckless and callous indifference to plaintiffs' rights protected under the Utah and United States Constitutions.

85.     The actions of defendants UHP and/or John and Jane Does as alleged herein were the proximate cause of the damages suffered by the plaintiffs.

### FOURTH CAUSE OF ACTION

#### Intentional or Negligent Infliction of Emotional Distress
#### (Defendants Steed and John and Jane Does)

86.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

14

87.     Defendants Steed's and/or John and Jane Does' intentional and/or reckless actions as described herein constituted extreme and outrageous conduct under the circumstances.

88.     Defendant Steed's and/or John and Jane Does' actions offended generally accepted standards of decency and morality.

89.     Any reasonable person would have known that the intentional and/or reckless actions of Defendant Steed and/or John and Jane Does would result in severe emotional distress to both plaintiffs.

90.     Both plaintiffs in fact suffered severe emotional distress caused by Defendant Steed's and/or John and Jane Does' actions.

## FIFTH CAUSE OF ACTION

### Conspiracy to Deprive Plaintiffs of Their
### Civil Rights Cognizable under 42 U.S.C. § 1983
### (All Defendants)

91.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

92.     Defendants conspired for the purpose of directly depriving plaintiffs of their civil rights under the laws of the United States and the State of Utah, which resulted in injury to both plaintiffs' person and property.

93.     Defendants conspired through an express and/or implied agreement or understanding among defendants to deprive plaintiffs of their constitutional rights.

94.     As a result of said express and/or implied agreement or understanding, plaintiffs were indeed deprived of said rights.

15

95.     Plaintiffs are entitled to recover damages stemming from such injury and/or deprivation.

## SIXTH CAUSE OF ACTION

### Civil Conspiracy
### (All Defendants)

96.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

97.     Defendants acted, through Defendant Steed and John and Jane Does, troopers and supervisors, in a combination of more than two persons.

98.     Defendants intended to deprive drivers in the State of Utah, including plaintiffs, of their constitutional rights, and via false DUI arrests and the levying of fines, to profit therefrom.

99.     Defendants agreed, either actively or through their failures to act, to pursue such deprivations and wrongful procurement of moneys.

100.     Defendants allowed Trooper Steed and other troopers to illegally stop, detain, and ultimately arrest innocent citizens and drivers in the State of Utah with little or no repercussions.

101.     Defendants allowed economic and non-economic damages to be incurred by plaintiffs, including fines, attorney's fees, court costs, towing fees, impound fees, insurance rate increases, and various other damages to be proved at trial.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for judgment against defendants as follows:

1.     Economic and non-economic damages (special and general, past and future) as provided under applicable laws and deemed appropriate by jury.

2.      Attorney fees and litigation expenses pursuant to 42 U.S.C. § 1983 and § 1988 and as provided under applicable law.

3.      Punitive damages against defendants as provided under applicable law and to the extent deemed appropriate by a jury.

4.      Pre-judgment and post-judgment interest as provided under applicable law.

5.      Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand trial by jury on all causes of action for which a jury is permitted.

DATED this 26th day of July 2013.

JAMES C. BRADSHAW
Attorney for Plaintiffs

K:\JCB\P\5564.wpd

17